IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–01634–KMT

KELLY RAMOS,

     Plaintiff,

v.

STATE FARM MUTUAL INSURANCE COMPANY, a/k/a STATE FARM INSURANCE
COMPANY,

     Defendant.

---

## ORDER

---

     Before the court are two motions: (1) "Defendant State Farm's Preliminary Motion for
Summary Judgment or in the Alternative Motion for Partial Summary Judgment on Extra
Contractual Claims or in the Alternative Motion to Bifurcate and Stay Discovery;" and (2)
"Defendant's Motion for Reconsideration of Order Denying Defendant's Motion for Leave to
Amend Its Answer to Add Affirmative Defense."  (["Motion for Summary Judgment"], Doc. No.
28; ["Motion for Reconsideration"], Doc. No. 49.)  Responses and replies have been filed, as
well.  (["Summary Judgment Response"], Doc. No. 32; ["Summary Judgment Reply"], Doc. No.
34; ["Reconsideration Response"], Doc. No. 50; ["Reconsideration Reply"], Doc. No. 51.)

### STATEMENT OF THE CASE

     On December 17, 2015, while driving westbound on Highway 50 in Pueblo, Colorado,
Plaintiff Kelly Ramos ["Ramos"] was "struck from the rear by the front of [another] vehicle at a

high rate of speed." (["Complaint"], Doc. No. 5 at 2[1] ¶¶ 5-7; Mot. for Summ. J. 2 ¶ 1.)  Ramos

claims to have sustained numerous injuries from the accident, including "a traumatic brain

injury, injury to neck, back, both legs, mouth, and [] severe cognitive and memory issues."

(Compl. 3 ¶¶ 11-13.)  Her resulting "economic loss" is said to exceed $450,000.00.  (*Id.* at 3 ¶

15; *see* Summ. J. Resp. 4 ¶ 8; Summ. J. Reply 4 ¶ 7.)

At the time of the accident, Ramos held a policy with Defendant State Farm Mutual

Insurance Company ["State Farm"], which included at least $100,000/300,000 of underinsured

motorists' benefits ["UIM"] coverage.[2]  (Compl. 4 ¶ 20; Mot. for Summ. J. 2 ¶ 2.)  The policy

provisions governing Plaintiff's UIM coverage stated, in relevant part, as follows:

### INSURED'S DUTIES

**4. Insured's Duty to Cooperate With Us**
a.  The ***insured*** must cooperate with ***us*** and, when asked, assist ***us*** in:
(1) making settlements;
(2) securing and giving evidence; and
(3) attending, and getting witnesses to attend, depositions, hearings, and trials.
                                        ***
**7. Other Duties Under . . . Uninsured Motor Vehicle Coverage . . .**
A ***person*** making a claim under . . . Uninsured Motor Vehicle Coverage . . . must:
(1) notify ***us*** of the claim and give ***us*** all the details about the death, injury, treatment, and other
information that ***we*** may need as soon as reasonably possible after the injured ***insured*** is first
examined or treated for the injury.  If the ***insured*** is unable to give ***us*** notice, then any other ***person***
may give ***us*** the required notice;
                                        ***
(3) provide written authorization for ***us*** to obtain:
(a) medical bills;
(b) medical records;
(c) wage, salary, and employment information; and
(d) any other information ***we*** deem necessary to substantiate the claim.

---

[1] Unless otherwise indicated, page citations refer to this court's CM/ECF pagination.

[2] The parties dispute the total amount of UIM coverage available under Plaintiff's insurance policy.
(Summ. J. Resp. 2 ¶ 2; Summ. J. Reply 3 ¶ 2.)

**UNINSURED MOTOR VEHICLE COVERAGE**

**Consent to Settlement**
The **insured** must inform **us** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the uninsured . . . or underinsured motor vehicle, and the **insured** must request **our** written consent to accept such settlement offer.  If **we**:
1. consent in writing, then the **insured** may accept such settlement offer.

*** 

**Exclusions**
THERE IS NO COVERAGE:
1. FOR AN **INSURED** WHO, WITHOUT **OUR** CONSENT, SETTLES WITH ANY **PERSON** OR ORGANIZATION WHO MAY BE LIABLE FOR THE **BODILY INJURY**[.]

(Mot. for Summ. J. Ex. A at 2-5.) (emphasis in original).

On February 11, 2016, Ramos reported the December 2015 accident to State Farm, and placed the insurer on notice of a potential UIM claim.  (Summ. J. Resp. 2 ¶ 1, Ex. 1 at 39-40; Summ. J. Reply 2 ¶ 1.)  Defendant's adjuster immediately opened an investigation into the incident.  (*See* Summ. J. Resp. Ex. 1 ["Claim File"] at 40.)  In the claim file, the adjuster recorded that the other driver's insurance carrier, Farmers Insurance, had already accepted liability.  (*Id.*)  The adjuster's notes indicated that Plaintiff and her husband, David Ramos,[3] intended to pursue damages against Farmers.  (*Id.* at 39-40.)

Then, in August 2017, without notifying State Farm, Plaintiff and her husband commenced a lawsuit against the at-fault driver [the "Underlying Action"].  (Mot. for Summ. J. 4 ¶ 4; *see* Summ. J. Resp. 1-2.)  In connection with that litigation, on January 19, 2018, Plaintiff underwent an independent medical examination ["IME"], which was conducted by Rebekah Martin, M.D.  (Mot. for Summ. J. Ex. B; Summ. J. Resp. 5 ¶ 18.)  The IME report, dated January

---

[3] It is unclear from the record whether, and to what extent, Plaintiff's husband was involved in the December 2015 collision.

23, 2018, and Dr. Martin's subsequent addendum, dated July 6, 2018, were thereafter distributed to the parties in the Underlying Action.  (*Id.*)  However, neither of Dr. Martin's expert reports were given to State Farm.  (Mot. for Summ. J. 5 ¶ 15; *see* Summ. J. Resp. 1-8.)

Following these events, on August 17, 2018, Plaintiff and her husband executed a General Release, in which they agreed to fully settle the claims of their lawsuit against the at-fault driver, in exchange for $500,000.00.  (Mot. for Summ. J. Ex. C; Summ. J. Resp. 7 ¶ 29.)  The record shows that Ramos did not notify State Farm of the proffered settlement offer, or obtain the insurer's permission to settle her claims against the at-fault driver, before signing the release.  (Mot. for Summ. J. 4 ¶ 7; *see* Summ. J. Resp. 1-8.)  Further, as of that date, Ramos still had not provided State Farm with any litigation documents filed in the Underlying Action.  (*Id.*)

After learning of Ramos's settlement, on September 15, 2018, State Farm performed an asset check on the at-fault driver to determine whether it would have intervened in the Underlying Action.  (Claims File 35-36.)  On September 26, 2018, State Farm determined that the at-fault driver lacked "any liquid assets."  (*Id.* at 35.)  Defendant's claims adjuster concluded, in light of that determination, that she "would have recommended to grant CTS [consent to sue]" in the Underlying Action.  (*Id.*)  The adjuster recorded her impression that it "[d]oes not appear that [State Farm] not being notified of suit or settlement has affected [State Farm's] ability to investigate."  (*Id.*)  The adjuster, therefore, "recommend[ed] moving forward with the handling of the UIM claim."  (*Id.*)  That same day, September 26, 2018, Defendant's claims manager reviewed and affirmed the adjuster's recommendation.  (*Id.* at 34.)  The claims manager wrote that she "[a]gree[d] with [the adjuster's] recommendation," and confirmed that it was "ok to proceed."  (*Id.*)  By letter dated December 28, 2018, the insurer notified Ramos as follows:

> State Farm[] consents to the settlement of the $500,000.00 policy limits of [the at-fault driver's] liability policy with our insured, Kelly Ann Ramos.  State Farm does not intend to pursue subrogation against Farmers or its insured(s) for any payment made from the [UIM] coverage of State Farm Mutual Automobile Insurance Company.

> State Farm agrees that by settling the bodily injury claim with Farmers, Kelly Ann Ramos does not prejudice her ability to present an Uninsured Motorist claim with State Farm.

(Mot. for Summ. J. Ex. D.)

Ten days later, on January 7, 2019, Plaintiff's attorney, Richard Orona, contacted State Farm concerning Ramos's pending UIM claim.  (Mot. for Summ. J. Ex. E.)  Mr. Orona informed State Farm that he would review his records "to determine what medical records, if any, have not already been sent to your office."  (*Id.*)  Plaintiff's attorney made clear to the insurer that "[i]f there are records not previously sen[t], I will forward them to you immediately."  (*Id.*)

On February 7, 2019, Mr. Orona sent a demand letter to State Farm for policy limit payment on Ramos's UIM coverage.  (Mot. for Summ. J. Ex. F.)  In that letter, Plaintiff's attorney referenced the $500,000.00 settlement reached between his client and the at-fault driver in the Underlying Action, explaining that:

> [T]he settlement amount reflects a resolution of both Mrs. Ramos and Mr. Ramos' legal claims.  To that extent, Mr. Ramos' claim is derived from his economic loss that exceeds $100,000, loss of consortium claim, non-economic claims, etc.  The settlement of Mr. Ramos' claim is in excess of $175,000 leaving the remainder of the settlement related to Mrs. Ramos' past, present, and future damages.  Clearly, considering the totality of her damages related to medical bills, lost wages, lost profit from her company, future medical treatment, disability, pain and suffering, etc., Mrs. Ramos was not fully compensated from the tortfeasor's settlement.

(*Id.*)  Mr. Orona stated his position that "State Farm has had the necessary information to support payment of UM/UIM policy limits but, as of today, has failed to pay any amounts—disputed or otherwise."  (*Id.*)  Plaintiff's attorney then demanded that State Farm pay his client "the benefits

owed under her insurance policy which amounts to policy limits within ten days of receipt of this correspondence." (*Id.*)

On March 11, 2019, State Farm responded to Mr. Orona's demand letter. (Mot. for Summ. J. Ex. G.) The insurer notified the attorney that "[a]fter reviewing all documentation on file, [State Farm] believe[s] that Ms. Ramos has been indemnified by the other insurance carrier." (*Id.*) Seven weeks later, on May 2, 2019, Plaintiff commenced this lawsuit to recover UIM policy benefits. (Doc. No. 1 at 1, Ex. A.)

In her Complaint, Ramos asserts three causes of action: (1) determination and payment of UIM benefits ["breach of contract"]; (2) bad faith breach of insurance contract ["common law bad faith"]; and (3) a violation of Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 ["statutory bad faith"]. (Compl. 4-7 ¶¶ 19-36.) Prior to the close of discovery, on January 21, 2020, Defendant moved for summary judgment on all three of Plaintiff's claims. (Mot. for Summ. J. 1, 6-12.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must

designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at

324; *see also* Fed. R. Civ. P. 56(c).

     "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v.*

*Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249

(1986)).  Whether there is a genuine dispute as to a material fact depends upon "whether the

evidence presents a sufficient disagreement to require submission to a jury," or conversely,

whether the evidence "is so one-sided that one party must prevail as a matter of law. *Carey v.*

*U.S. Postal Service*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52).  A disputed fact

is "material" if "under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at

248).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return

a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160

(10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First*

*Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

     In evaluating a motion for summary judgment, a court may consider admissible evidence

only.  *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).  The factual record

and reasonable inferences therefrom are viewed in the light most favorable to the party opposing

summary judgment.  *Concrete Works*, 36 F.3d at 1517.  However, this standard does not require

the court to make unreasonable inferences in favor of the non-moving party.  *Carney v. City &*

*Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).  The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.  *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### I.  *Motion for Reconsideration*

Eleven weeks after filing its motion for summary judgment, on April 28, 2020, Defendant filed a motion to amend its Answer to assert an affirmative defense of failure to cooperate.  (Doc. No. 39.)  In that motion, State Farm argued that it should be allowed to amend its Answer— nearly seven months beyond the Scheduling Order deadline to amend pleadings—because "it was not until after [Ramos] filed this lawsuit and State Farm filed its answer that State Farm learned [Ramos] withheld information that the parties agree is material to her [UIM] claim."  (*Id.* at 3.)  On June 22, 2020, this court denied Defendant's motion to amend, on the basis that the insurer failed to provide "good cause for seeking modification," as is required by Federal Rule of Civil Procedure 16(b)(4).  (Doc. No. 48.)  State Farm now asks the court to reconsider its prior ruling, and to "permit the proposed amendment to add a failure to cooperate affirmative defense."  (Mot. for Recons. 2.)

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.'" *Williams v. Akers*, 837 F.3d 1075, 1077 n.1 (10th Cir. 2016) (quoting *Ysais v. Richardson*, 603 F.3d 1175, 1178 n.2 (10th Cir. 2010)).  Rather, a litigant "must file [either] a motion to alter or amend judgment pursuant to [Rule] 59(e) or a motion seeking relief from judgment pursuant to [Rule] 60(b)."  *Id.*  "Which rule applies to a motion depends essentially on the time a motion is served."  *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).  Specifically, a

motion to alter or amend the judgment must be filed within twenty-eight days after judgment is entered. *See* Fed. R. Civ. P. 59(e). Here, Defendant filed the motion to reconsider on July 13, 2020, which was within twenty-eight days of the June 22, 2020 Order. (*See* Doc. No. 48.) Therefore, the court will consider the motion to reconsider pursuant to Rule 59(e). *See Sahami v. Met. State Univ. of Denver*, No. 17-cv-00616-CMA-NYW, 2018 WL 7436264, at *1 n.1 (D. Colo. Aug. 31, 2018) (construing a similar motion under Rule 59(e)).

A motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). A Rule 59(e) motion may be granted "to correct manifest errors of law or to present newly discovered evidence." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). Such relief is also warranted "where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). However, a Rule 59(e) motion is not an opportunity "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*; *see Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994) ("A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."). "A motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Mantooth v. Bavaria Inn Rest.*, 360 F. Supp. 3d 1164, 1169 (D. Colo. 2019) (quoting *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)) (alteration omitted).

In the present motion for reconsideration, Defendant argues that the court "erred in finding that the filing of the Motion to Amend after the deadline to amend pleadings was not supported by good cause." (Mot. for Recons. 4.) Defendant argues, specifically, that Plaintiff "led [it] to believe she consented" to the addition of a noncooperation defense, on July 29, 2019, when the parties jointly filed their Proposed Scheduling Order. (*Id.*) The insurer complains that Ramos "took no action" to object to its assertion of a noncooperation defense "at that time," and instead, "waited until State Farm sought summary judgment based on her failure to cooperate [to]. . . claim the defense was improper as unplead [sic]." (*Id.*) State Farm stresses that it "would have filed [a motion to amend] sooner if [Ramos] had objected sooner." (*Id.*) However, Defendant raised a similar argument in its previous motion to amend, and the court declines "to revisit issues already addressed." *Servants of the Paraclete*, 204 F.3d at 1012; *see Bethel v. United States*, No. 05-cv-01336-PSF-KLM, 2007 WL 3024283, at *1 (D. Colo. Oct. 12, 2007) (finding a Rule 59(e) motion to be without merit, where the issues raised for reconsideration were "previously briefed and argued").

As stated in this court's prior ruling, the uncontroverted record shows that State Farm "was put on notice of the information pertinent to its assertion of a noncooperation defense well before the September 10, 2019 deadline to amend pleadings." (Doc. No. 48 at 7-8.) The failure to take appropriate action to assert a noncooperation defense, until April 28, 2020, lies with State Farm alone. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*,771 F.3d 1230, 1240 (10th Cir. 2014) ("Rule 16's good cause requirement may be satisfied . . . if a p[arty] learns new information through discovery;" however, "[i]f the p[arty] knew of the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."); *Perez v. Denver Fire Dep't*, 243

F. Supp. 3d 1186, 1199 (D. Colo. 2017) (Mere carelessness on the party of the movant "offers no reason for a grant of relief.").  Defendant still has not provided an "adequate explanation for the delay" that satisfies Rule 16(b)'s "good cause" standard.  *See Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1195 (10th Cir. 2020) ("Good cause obligates the moving party to provide an adequate explanation for the delay.") (alterations and citation omitted).  Nor has Defendant identified any "intervening change in the controlling law," or "new evidence previously unavailable," which might warrant the court's reconsideration of its prior ruling.  *See Servants of Paraclete*, 204 F.3d at 1012 ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct error or prevent manifest injustice.").

State Farm also urges the court to reconsider its prior ruling to "prevent manifest injustice."  (Mot. for Recons. 5.)  Defendant cautions that, "[i]f the court does not reconsider the Order," and "allow State Farm to assert its substantive affirmative defense," Plaintiff will potentially "escape the legal consequences" of her actions, "exclusively on the basis of a procedural rule."  (*Id.* at 6; Recons. Reply 2.)  The insurer argues that "[t]his elevates 'procedural niceties' over the merits of State Farm's potentially dispositive defense."  (Mot. for Recons. 6.)

Although the court does acknowledge State Farm's predicament, the insurer's argument regarding "manifest injustice" is unavailing, as it is not directed at any error in the previous Order.  Indeed, State Farm does not contend that this court misapprehended its position; it simply asks the court to consider its position a second time.  The fact that the court was not persuaded by Defendant's arguments is not a sufficient basis to revisit issues already decided.

On this record, then, Defendant has failed to provide adequate grounds to warrant the court's reconsideration of its June 22, 2020 Order denying the insurer's motion to amend. Accordingly, the present motion for reconsideration is denied.

## II.  *Motion for Summary Judgment*

### A.  *Breach of Contract Claim*

Plaintiff alleges that Defendant breached the terms of her insurance policy, by failing to pay UIM benefits.  (Compl. 4 ¶¶ 19-23.)  Under Colorado law, which governs here, the required elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages suffered by the plaintiff as a result of the defendant's breach.  *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).

In its motion for summary judgment, Defendant argues that "Plaintiff forfeited any right to claim insurance benefits based on her failure to comply with the terms and conditions of the insurance contract, which terms and conditions are conditions precedent to coverage."  (Mot. for Summ. J. 6-7.)  State Farm contends, specifically, that Ramos breached the policy through her noncooperation, by failing to give adequate notice of the Underlying Action against the at-fault driver, and by failing to provide it "with all the details about her injury and treatment."  (*Id.* at 8.)

In Colorado, "[r]ecovery under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer in 'some material and substantive respect.'"  *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) (quoting *Farmers Auto. Inter-Ins. Exch. v. Konugres*, 202 P.2d 959, 962 (Colo. 1949)); *accord Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 565 (Colo. App. 2015); *see State Farm Mut. Auto.*

*Ins. Co. v. Brekke*, 105 P.3d 177, 189 (Colo. 2004) (en banc) ("In addition to the duty to investigate owed by the insurer to the insured, the insured owes contractual duties of cooperation and reporting to the insurance provider.").  "The purpose of a cooperation clause is to protect the insurer in its defense of claims by obligating the insured not to take any action intentionally and deliberately that would have a substantial, adverse effect on the insurer's defense, settlement, or other handling of the claim."  *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001) (citation omitted).

Importantly, "[w]hether there has been 'cooperation' on the part of [the insured] . . . is usually a question of fact."  *Konugres*, 202 P.2d at 963; *Hansen*, 779 P.2d at 1364 ("Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court.").  "Non-cooperation constitutes breach only if material and substantial disadvantage to the insurer is proved."  *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001) (quoting *Hansen*, 779 P.2d at 1364).  Further, the scope of such noncooperation is dependent upon the specific policy provisions at issue.  *Soicher*, 351 P.3d at 565 (citing *Secrist*, 33 P.3d at 1275).  "[A]ny formal, inconsequential or collusive lack of cooperation will be immaterial."  *Hansen*, 779 P.2d at 1364 (quoting *Konugres*, 202 P.2d at 963).  And, a putative violation of a cooperation clause "may be excused, if it develops that the failure of the [insured] was due to mistake, and that there was no exercise of bad faith on his part."  *Id.* (quoting *Konugres*, 202 P.2d at 963).

Here, as discussed *supra*, State Farm did not plead a noncooperation defense in its Answer to the Complaint.  (*See* Doc. No. 10.)  Federal Rule of Civil Procedure 8(c) obligates a party to set forth affirmatively all matters which it intends to use as an affirmative defense in

responding to a pleading.  Fed. R. Civ. P. 8(c)(1).  An affirmative defense is one that would

entitle State Farm to judgment in its favor, even if Ramos could prove all elements of her claim.

*Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1170 (D. Colo. 2014).  Under Colorado

law, it remains an open question whether noncooperation is an affirmative defense or a failure of

a condition precedent.  *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo.

App. 2015).  To the extent noncooperation is an affirmative defense, it "must be specifically

asserted in a party's responsive pleading or it is waived."  *Id.*; *see Peden v. State Farm Mut.

Auto. Ins. Co.*, 841 F.3d 887, 894 (10th Cir. 2016) ("Failure to plead an affirmative defense

results in a waiver of that defense[.]").  To the extent noncooperation is a failure of a condition

precedent, it must be pled "specifically and with particularity."  *Soicher*, 351 P.3d at 565.

　　In this case, even assuming Defendant properly raised noncooperation as a defense to

Plaintiff's contract claim, the record is replete with genuine issues of material fact that preclude

summary judgment.  State Farm contends that Ramos failed to comply with the terms of her

policy, requiring her to "cooperate with" and "assist" the insurer in the various stages of

litigation, including "making settlements" and "securing and giving evidence," as well as to

provide it with all information relevant to the UIM claim "as soon as reasonably possible."

(Mot. for Summ. J. 2-4, 8; *see* Mot. for Summ. J. Ex. A.)  As evidence that Ramos failed to

comply with these policy terms, State Farm points to the fact that she did not disclose Dr.

Martin's IME report and addendum, which were generated in the Underlying Action, until after

this lawsuit was filed, in August 2019.  (Mot. for Summ. J. 10.)  State Farm argues that Dr.

Martin's reports "called into question the extent to which [Ramos's] clamed injuries were

attributable to the subject accident."  (*Id.*)  The insurer contends that it was materially and

substantially prejudiced by Plaintiff's conduct, because it "was denied the opportunity to review, evaluate, and investigate those reports prior to considering and evaluating [her] claims for UIM benefits."  (*Id.*)  Defendant likewise contends that it was significantly disadvantaged by Plaintiff's failure to provide it with notice of the Underlying Action, because it "was denied the opportunity to participate in the litigation below, denied the opportunity to review the evidence presented in the case below, denied the opportunity to review information prior to sending it to a Rule 35 examiner, denied the opportunity to give questions to the examiner, and denied the opportunity to take depositions in the case (including of medical providers)."  (*Id.* at 8.)  In addition, State Farm complains that it "was denied the opportunity to fully explore whether or to what extent apportionment of the settlement proceeds was appropriate."  (*Id.* at 9.)

Ramos, for her part, points to evidence showing that State Farm did not consider itself to have been disadvantaged, either by her failure to provide notice of the Underlying Action, or by her failure to obtain State Farm's written consent prior to settling her claims against the at-fault driver.  (Summ. J. Resp. 11; Claim File 34-35.)  Plaintiff also points to the fact that Defendant, ultimately, did provide her with written consent to settle her claims.  (Summ. J. Resp. 12.)  She contends that the insurer was not materially and substantially disadvantaged by the timing of her disclosure of Dr. Martin's expert reports, given that the reports were consistent with State Farm's position "regarding the type and extent of [her] injuries."  (*Id.* at 16.)  Ramos also notes that, during the course of its investigation of her UIM claim, State Farm never asked her to provide any expert reports generated in the Underlying Action, and never requested a sworn statement from her regarding the subject collision and her resulting injuries.  (*Id.* at 17.)

The court finds that, on this record, a reasonable juror could conclude that Ramos *did* cooperate in the investigation of the UIM claim, substantially complying with the terms of her policy.  Further, there is evidence from which a reasonable juror could conclude that, to whatever extent Plaintiff did not cooperate with Defendant, the failure did not prevent State Farm from fairly and accurately evaluating the UIM claim.  And, importantly, there is nothing in the record to suggest that Plaintiff's conduct was particularly "egregious," or that it was "part of a plot to conceal a fraudulent claim."  *See Cribari v. Allstate Fire & Cas. Ins. Co.*, 375 F. Supp. 3d 1189, 1198, 1200 (D. Colo. 2019).  Because genuine issues of material fact remain, summary judgment on Plaintiff's breach of contract claim is not warranted.

### B.  Bad Faith Claims

Ramos also asserts two bad faith claims: (1) bad faith breach of an insurance contract, which is a common law tort under Colorado law; and (2) unreasonable delay or denial of insurance benefits, which is a statutory penalty under §§ 10-3-1115 and 10-3-1116 of the Colorado Revised Statutes.  (Compl. 4-7 ¶¶ 24-36.)  Plaintiff alleges, specifically, that Defendant acted in bad faith by, among other things, "[r]efusing to pay a reasonable amount for [the UIM] claim following a reasonable investigation based upon all available information;" "fail[ing] to provide a reasonable explanation for its evaluation and determination of [the UIM] claim;" "[d]epriving [her] of the benefits and protections of the contract of insurance;" "[e]ngaging in an incomplete, less than thorough, one-sided investigation of the evidence, improperly acting in preference to its rights and interests to [her] detriment;" "[c]laiming that [she] was 'fully compensated' when [it] knew that, in fact, [her] damages exceeded the value of the [at-fault driver]'s liability policy;" "[n]ot attempting in good faith to effectuate a prompt, fair and

equitable settlement of a claim in which liability had become reasonably clear;" "[u]sing its superior financial might in an effort to force [her] into the position of either filing suit to determine the value of her UIM claim, or forgoing benefits entirely;" "[c]ompelling [her] to institute litigation to recover amounts due under the insurance contract;" and "[r]efusing to negotiate or to respond to requests for information made by [her] counsel in a timely manner." (*Id.* at 5-6 ¶ 28.)  Defendant moves for summary judgment on both bad faith claims, contending that Plaintiff has failed to put forth any evidence to show that it acted unreasonably at any stage of the claims process.  (Mot. for Summ. J. 10-12.)

"In every insurance contract, there is an implied covenant of good faith and fair dealing." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) (citing *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo. App. 1998)).  Broadly speaking, "[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer."  *Id.* (citation omitted).  "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort.'"  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).  To prevail on a common law bad faith claim, a plaintiff must prove that the insurer "acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim."  *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)).  This standard of care balances "the right of an insurance carrier to reject a non-

compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011 (quoting *Goodson*, 89 P.3d at 415).

To prevail on a statutory bad faith claim, by contrast, a plaintiff need only prove that a benefit to which she was entitled under an insurance policy was unreasonably delayed or denied. *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012); *see* C.R.S. § 10-3-1115(1)(a) ("[A] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."). If the statutory requirement is met, a plaintiff is entitled to receive a penalty payment of two times the benefit (in addition to the benefit itself), plus reasonable attorney's fees and costs. C.R.S. § 10-3-1116(1); *see Vaccaro*, 275 P.3d at 756 (noting that, because of the lesser liability burden and the onerous penalty provision, a statutory bad faith claim is "arguably . . . more financially threatening to the insurer than a traditional common law bad faith claim").

Importantly, under both the statute and the common law, Plaintiff must prove that Defendant acted unreasonably. *Vaccaro*, 275 P.3d at 756 ("While first-party bad faith principles require a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, . . . the statutory claim requires only that a first-party claim be denied without a reasonable basis."). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Id.* at 759. But, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.*

"The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards." *Schultz*, 429 P.3d at 847 (quoting *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004) (common law bad faith); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 994 (Colo. App. 2015) (statutory bad faith claim). Industry standards may be established through expert opinion or state law. *Goodson*, 89 P.3d at 415; *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). Further, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 847 (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)); *see Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.")

Defendant argues that Plaintiff cannot show that it "acted unreasonably," for purposes of establishing a common law bad faith claim, because "it is undisputed" that she did not provide it with timely notice of the Underlying Action and settlement, or timely disclose Dr. Martin's IME reports. (Mot. for Summ. J. 12.) State Farms likewise contends, with respect to the statutory bad faith claim, that "the issues before the court are uniquely limited," in that "the question of whether there was a violation of Colo. Rev. Stat. § 10-3-1115(1)(a) turns exclusively on whether there was unreasonable delay." (*Id.* at 11.) The insurer argues that "this case involves nothing more than a valuation dispute," because the "undisputed facts establish" that it did not "engage[] in any delay, much less unreasonable delay." (*Id.* at 11-12.)

Ramos, on the other hand, argues that her bad faith claims are not predicated merely upon "an unreasonable delay," but rather, "the totality of [] State Farm's actions and inactions in

denying UM/UIM benefits."  (Summ. J. Resp. 20.)  Plaintiff insists that there are "sufficient

facts" from which to conclude that Defendant's conduct was unreasonable."  (*Id.* at 20-21.)  In

particular, Ramos has produced evidence to show that, during the claims adjustment process,

State Farm did not request a sworn statement from her, or otherwise speak with her, regarding

the subject collision and her resulting damages.  (*Id.* at 21; *see generally* Claim File.)  Plaintiff

points to the same evidence as proof that the insurer did not request a medical records review to

evaluate whether her "extensive medical care and bills were reasonable, necessary, and accident

related."  (*Id.*)

       In this case, the court finds that a genuine dispute of material fact exists as to whether

State Farm conducted a reasonable investigation into Ramos's UIM claim.  "[A] reasonable

investigation is one that is based upon 'all available information.'"  *Am. Family Mut. Ins. Co. v.

Allen*, 102 P.3d 333, 345 (Colo. 2004).  The duty to conduct a reasonable investigation includes

"a duty to promptly and effectively communicate with anyone [the insurer is] reasonably aware

ha[s] . . . information pertaining to the handling of the plaintiff['s] claim."  *Dunn v. Am. Family

Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010).  "Implicit in the duty to investigate is the

requirement that the investigation be adequate and fair.  Adequacy and fairness means that the

insurer has a duty to diligently search for evidence which supports [the] insured's claim and not

merely seek evidence upholding its own interests."  *Thompson v. State Farm Mut. Auto. Ins. Co.*,

457 F. Supp. 3d 998, 1004 (D. Colo. 2020) (quoting 14 Steven Plitt et al., Couch on Insurance §

207:2d (3d ed. 2019)); *see Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n.7 (Colo.

2007) ("[B]ad faith can occur in the unreasonable refusal to investigate a claim or to gather

facts.").  Here, State Farm has provided scant evidence to demonstrate that it adequately

investigated Ramos's claim.  Nor does Defendant even argue that its actions were aligned with relevant industry standards.  *See Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1005 (D. Colo. 2020); *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1111 (D. Colo. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (The burden is on the moving party to establish the lack of a material fact issue.).

To the extent Defendant argues that this case involves a mere dispute in valuation, the Colorado Court of Appeals has made clear that an insurer cannot "avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute." *Vaccaro*, 275 P.3d at 760 ("*Bucholtz*, *Zolman*, and *Sanderrson* stand for the proposition that a genuine difference of opinion over the value of an insurance claim *weighs against* a finding of bad faith.") (emphasis added).  Indeed, "every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all." *Id.*

Defendant also argues, for the first time in its Reply, that Plaintiff "failed to put forth any admissible evidence to show [that its] handling of [her] claim violated any industry standards." (Summ. J. Reply 14.)  "The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."  *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (alterations omitted).  Further, State Farm's argument misconstrues the parties' respective burdens on summary judgment.  State Farm bears the initial burden "to show that there is no genuine dispute of material fact that its conduct complied with applicable industry standards and, additionally, that it is entitled to judgment as a matter of law."  *Montoya v. Allstate Ins. Co.*, No. 14-cv-02943-LTB-KMT, 2016 WL 192274, at *4 (D. Colo. Jan. 15, 2016);

*see also Jewell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02536-KLM, 2020 WL 1627348, at

*5 (D. Colo. Feb. 26, 2020) ("Defendant here had the initial burden in [the motion for summary

judgment] of either (1) providing evidence that Defendant complied with industry standards

applicable to the facts of this case, or (2) pointing out that Plaintiff lacked evidence of an

objective industry standard applicable to the facts of this case showing that Defendant acted

unreasonably.  Defendant failed to do so, and Plaintiff is not required to respond to an argument

which was not directly made in the Motion."); *Stoole v. Metro. Prop. & Cas. Ins. Co.*, No. 17-cv-

00613-NYW, 2018 WL 4923939, at *2 (D. Colo. Oct. 10, 2018) (noting that a plaintiff was not

obligated, in the response to a motion for summary judgment, to provide evidence of industry

standards, where the defendant failed to raise that argument in the motion itself).  State Farm has

not met this burden.

On this record, then, a genuine issue of material fact still remains as to whether State

Farm reasonably and thoroughly investigated Ramos's UIM claim.  As such, State Farm is not

entitled to summary judgment on either of Plaintiff's bad faith claims.[4]  *See Vaccaro*, 275 P.3d at

759; *Zolman*, 261 P.3d at 497; *see also Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F.

Supp. 3d 998, 1004 (D. Colo. 2020) ("[B]ecause the Court finds that the jury must determine

whether defendant's conduct was reasonable for the purposes of plaintiff's [common law] bad

---

[4] To succeed on her common law bad faith claim, Plaintiff must also prove that Defendant "knew
or recklessly disregarded the fact that its conduct was unreasonable." *Schultz v. GEICO Cas. Co.*,
429 P.3d 844, 847 (Colo. 2018).  Defendant, in its motion for summary judgment, devotes only
one sentence to addressing this issue, stating that Plaintiff "cannot come forward with admissible
evidence" to establish the second element of her claim.  (Mot. for Summ. J. 12.)  The court need
not address this perfunctory argument.  *See Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d at
890 n.3 (10th Cir. 2016) (declining to reach second prong of common law bad faith claim, because
the insurer "[d]id not develop an argument on this additional element of the common-law claim,"
instead "devot[ing] only one sentence to this argument").

faith claim, it also finds that this same determination must be made with regards to plaintiff's [statutory bad faith] claim.").

### C. Bifurcation

As a final matter, Defendant asks, in the alternative, that Plaintiff's extra-contractual claims (*i.e.,* the bad faith claims) be bifurcated from the UIM claim, and then "stayed pending resolution of the UIM claim." (Mot. for Summ. J. 12-14.)

Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). Rule 42(b) is "sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-REB-KMT, 2018 WL 10609649, at *1 (D. Colo. Deb. 9, 2018) (quoting *In re Benedictin Litig.*, 857 F.2d 290, 308 (6th Cir. 1988)). In the Tenth Circuit, bifurcation is appropriate when the "issues are clearly separable" and the interests of judicial economy and expedition "favor separation of issues." *U.S. ex rel. Bahrani v. Conagra, Inc.*, 624 F.3d 1275, 1284 n.2 (10th Cir. 2010) (quoting *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)). A court has "broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *Id.* at 1283 (citation omitted). Even so, "that does not mean that severance is the norm or even a common occurrence." *Salls v. Secura Ins.*, No. 18-cv-00370-MSK-GPG, 2019 WL 1228068, at *2 (D. Colo. Mar. 16, 2019) (quoting *The Marianist Province of the U.S., Inc. v. ACE USA*, No. 08-cv-01760-WYD-MEH, 2010 WL 2681760, at *1 (D. Colo. July 2, 2010)). Further, "bifurcation in UIM cases is generally disfavored in this

District."  *Bonham v. GEICO Cas. Co.*, No. 15-cv-02109-MEH, 2016 WL 26513, at *2 (D. Colo.

Jan. 4, 2016).

Here, Defendant, as the movant, has failed to show that bifurcation is warranted.  The

court finds that the contract and bad faith claims are not "clearly separable," as they arise from

the same occurrence: State Farm's refusal to pay Ramos the policy limits of her UIM coverage

for the 2015 car accident.  While each of Plaintiff's claims do present different legal theories,

they seek redress for essentially the same wrong.  The UIM benefits claim seeks to determine the

amount of damages State Farm should pay under the policy, while the bad faith claims seek

redress for the insurer's allegedly unreasonable conduct in connection with its refusal to pay said

benefits.  Ramos's claims also rest on a similar factual basis—the circumstances of the accident,

the specific provisions of the insurance policy, and State Farm's conduct in refusing to pay.

"This fraternal twin nature of the claims weighs against bifurcation."  *Baros v. Sentry Ins.*, No.

11-cv-02487-LTB-KLM, 2012 WL 846706, at *2 (D. Colo. Mar. 12, 2012).

Importantly, State Farm offers no compelling argument as to why bifurcation would be

more convenient, or conducive to expedition and economy.  Rather, Defendant argues only that

bifurcation "ensures that the jury is not confused by evidence of [State Farm]'s claims handling,

which is irrelevant to and inadmissible in a trial related solely to the UIM breach of contract

claim."  (Mot. for Summ. J. 13.)  However, any potential confusion can be alleviated simply by

appropriate instruction to the jury.  Further, if Plaintiff's claims *were* severed, the two cases

would be largely duplicative, thus resulting in unnecessary additional cost and time to the

litigants and the court.  *See Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 282 (Colo.

App. 2006) ("Salazar's bad faith claims would involve much of the same evidence as the UIM

benefits claim.  Thus, for the jury to hear these claims in the same action would have been convenient and efficient.").

Defendant also complains that, unless Plaintiff's claims are bifurcated, it will be "put in the untenable position of potentially having to give up its right to keep from the jury otherwise irrelevant information regarding its claims handling in order to be able to fully defend against the extra-contractual damages claims."  (Mot. for Summ. J. 13.)  The insurer likewise cautions that "the jury is likely to misuse evidence of claims evaluation and settlement authority to impermissibly establish a 'floor' to [Ramos]'s recovery on her breach of contract claim."  (*Id.* at 13-14.)  These concerns are speculative and overstated.  As stated, any potential prejudice to State Farm can be mitigated by appropriate jury instructions.  "Juries are presumed to follow such instructions; this case should be no exception."  *Anderson*, 2018 WL 10609649, at *3.

Accordingly, it is

**ORDERED** that "Defendant State Farm's Preliminary Motion for Summary Judgment or in the Alternative Motion for Partial Summary Judgment on Extra Contractual Claims or in the Alternative Motion to Bifurcate and Stay Discovery" (Doc. No. 28) is **DENIED**.  It is further

**ORDERED** that "Defendant's Motion for Reconsideration of Order Denying Defendant's Motion for Leave to Amend Its Answer to Add Affirmative Defense" (Doc. No. 49) is **DENIED**.

Dated this 19th day of October, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge